UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ONTARIO MAJOR JUNIOR HOCKEY CORP., | : | CASE NO. 14-mc-21 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | ELECTRONICALLY FILED |
| | : | |
| BASSIN HOCKEY, INC., | : | |
| | : | |
| Defendant. | : | JUDGE |
| _____ | : | |

**BRIEF IN SUPPORT OF MOTION TO OPEN AND/OR STRIKE CONFESSED JUDGMENT AND COUNTERCLAIMS**

Movant and Defendant, Bassin Hockey, Inc. ("BHI", or the "Movant"), by and through its undersigned counsel, hereby files this *Brief in Support of Motion to Open and/or Strike Confessed Judgment and Counterclaims*.

**Introduction**

**I.     Loans and Alleged Events of Default**

In 2011, Erie Hockey Club Limited ("EHCL") was having financial difficulty due to poor performance of the Team and low attendance. As a result, EHCL required a significant amount of additional capital to continue the Team operations.

On December 29, 2011, OMJHC (as Lender), Bassin Hockey, Inc. ("BHI") (as Borrower), EHCL (as Subsidiary) and Sherwood Bassin (as Principal) entered into a Master Agreement pursuant to which OMJHC made advances totaling $4,211,796.00 to BHI (the "Loans"), which advances were guaranteed by EHCL. Pursuant to the Master Agreement, OMJHC agreed not only to advance a loan to BHI upon closing but to make additional loans to BHI to fund, in part, operating deficits of EHCL. A copy of the Master Agreement is

attached to the Complaint as Exhibit "A" and is incorporated herein by reference.  A portion of the Loan proceeds were used by BHI to acquire 100% ownership of EHCL, and a portion of the proceeds were loaned by BHI to EHCL to pay debts and fund operations.

Pursuant to paragraph 2.4(a) of the Master Agreement, the Loans were to be repaid "by set-off of the same against any funds payable by the Lender under the Asset Purchase Agreement."  The Asset Purchase Agreement was to reflect terms and conditions under which OMJHC would buy EHCL.  If the Loans were not repaid through the sale of the Team to OMJHC, which they were not, the Loans were to be repaid through the sale of the Team to a third-party.

Under the terms of the Master Agreement, and in exchange for the advance of funds, BHI executed the following Demand Promissory Notes to OMJHC:

| Date | Amount |
| --- | --- |
| December 29, 2011 | $3,500,000.00 |
| December 29, 2011 | $145,585.00 |
| August 30, 2012 | $203,763.00 |
| August 30, 2012 | $53,660.00 |
| December 3, 2012 | $53,660.00 |
| May 14, 2013 | $255,128.00 |
| Total: | **$4,211,796.00** |

Copies of the Demand Promissory Notes are attached to the Complaint as Exhibit "B" and are incorporated herein by reference.

In a letter dated June 30, 2013, OMJHC demanded repayment of the Loans through the sale of the Team.  A copy of this letter is attached to the Complaint as Exhibit "C" and is incorporated herein by reference.  Since June 30, 2013, EHCL has marketed the Team for sale in accordance with its obligations under the Master Agreement.

In a letter dated December 9, 2013, OMJHC asserted that EHCL and BHI had breached numerous provisions of the Master Agreement and the Amending Agreement for failing to provide the financial information required by various provisions of the Master Agreement, and that those breaches would constitute an Event of Default if not cured within ten days of notification. A copy of this letter is attached to the Complaint as Exhibit "D" and is incorporated herein by reference.

In a letter dated December 20, 2013, the Lender asserted that an Event of Default had occurred because EHCL and BHI failed to cure the financial reporting deficiencies outlined in the December 9, 2013 letter and, as a result, interest began to accrue as of that date. A copy of this letter is attached to the Complaint as Exhibit "E" and is incorporated herein by reference. BHI denied, and still denies, that an Event of Default occurred as a result of its alleged failure to provide the requested financial information.

Starting in the beginning of 2012, shortly after the Master Agreement was signed, through June 30, 2013, when the initial demand letter was issued, OMJHC had representatives in EHCL's office on a regular basis and EHCL's financial information was moved over to OMJHC's accounting system, giving OMJHC constant and full access to any and all financial information they desired. Additionally, while the parties were discussing a potential forbearance agreement in March and April 2014, OMJHC representatives were once again given full access to EHCL's financial information and direct access to EHCL's bookkeeper. BHI's only asset is its ownership interest in EHCL. As a result, EHCL's financial information is BHI's financial information.

## II.     OMJHC's Obligation to Fund Subsidiary Operating Expenses

Pursuant to paragraphs 4.1(i) and 5.1(a) of the Master Agreement, OMJHC was obligated to pay sixty percent (60%) of all operating losses and approved capital expenditures

incurred by EHCL in its ordinary course business operations (defined in the Master Agreement as the "Subsidiary Operating Expenses") starting with the 2011-2012 hockey season. The Master Agreement does not provide for a mechanism by which OMJHC can terminate its obligation to pay 60% of the Subsidiary Operating Expenses. Pursuant to paragraph 5.1(a) of the Master Agreement, concurrently with the first advance of $3,500,000, OMJHC was entitled to 60% of all operating profits (defined in the Master Agreement as the "Subsidiary Operating Profits").

In August 2012, OMJHC refused to pay approximately $150,000 in Subsidiary Operating Expenses unless and until EHCL and BHI executed an "Amending Agreement" dated August 30, 2012. A copy of the Amending Agreement is attached to the Complaint as part of Exhibit "A" and is incorporated herein by reference. Paragraph 2.2(a)(1) of the Amending Agreement amended paragraph 5.1(a) of the Master Agreement and retroactively reduced OMJHC's share of the Subsidiary Operating Expenses and the Subsidiary Operating Profits for the 2011-2012 OHL season from 60% to 40%. Paragraph 2.2(a)(2) of the Amending Agreement reduced OMJHC's share of the Subsidiary Operating Expenses for the 2012-2013 OHL season to 60% of the total Subsidiary Operating Expenses incurred to a maximum of 60% of the Subsidiary Operating Expenses set out in the approved annual budget and 40% of the Subsidiary Operating Expenses in excess of the budgeted amount.

Unbeknownst to EHCL, BHI or the Principal, OMJHC also added a provision to the Amending Agreement (in paragraph 2.2(a)(2)) that allows OMJHC to terminate its obligation to pay its share of the Subsidiary Operating Expenses and its right to receive its share of the Subsidiary Operating Profits upon issuance of a demand for repayment pursuant to section 5.2 of the Master Agreement. In an email dated August 23, 2012, from Patrick LaForge who,

upon information and belief, is the president of OMJHC, to the Principal and others, Mr. LaForge outlined the parties' agreement to amend the terms of the Master Agreement with respect to their respective shares of the Subsidiary Operating Expenses and Subsidiary Operating Profits.  A true and correct copy of Mr. LaForge's email is attached to the Motion as Exhibit "1", and is incorporated by reference.  In his email, Mr. LaForge states, in part:

> Sherwood,
>
> Further to our discussions last night.
>
> <u>We are pleased to have reached agreement on a change to our funding model going forward.  My understanding is that the two parties have agreed to flip positions on any expenses or profits earned by the Otters during the next year such that BHI will cover 60% of any expenses that exceed the agreed to annual Budget for operating the Otters and/ or BHI will receive 60% of any profits earned by the Otters that may exceed the agreed to annual Budget.  KG of course will cover or receive 40%.</u>

At no point in this summary of the parties' agreement, and at no point during the parties' discussion, did EHCL, BHI or the Principal agree (or even discuss the option) to allow OMJHC to terminate its funding responsibilities upon issuance of a demand for payment pursuant to section 5.2 of the Master Agreement.

When the Principal received the Amending Agreement, he signed the document believing it reflected the terms the parties had discussed and agreed upon.  Not only was the right to terminate inserted into the Amending Agreement without the knowledge or approval of the Principal, EHCL or BHI, the Amending Agreement was signed under duress because OMJHC refused to remit approximately $150,000 in Subsidiary Operating Expenses unless and until the Amending Agreement was signed, even though OMJHC was legally obligated to pay such Subsidiary Operating Expenses under the Master Agreement.  OMJHC withheld the Subsidiary Operating Expense payment despite the fact that it was well aware of EHCL's precarious

financial condition, and that Movant would likely have been unable to operate without such funds at the beginning of the 2012-2013 season, which was just about to begin.

### III.    OMJHC's Bad Faith Conduct

####     A.    Proposed Consent and Forbearance Agreement

In connection with a potential forbearance agreement, EHCL, BHI and the Principal agreed in principal to allowing OMJHC to have complete control of the process to sell the Team, but EHCL, BHI and Principal wanted to retain the right to select a winner from amongst bidders that all resulted in timely repayment of Principal.  In multiple conversations, the parties agreed to the sale process in principal, but OMJHC continually attempted to include additional extremely prohibitive provisions that were contrary to all discussions and would result in EHCL, BHI and Principal having fewer rights than under the existing agreements.

In March 2014, OMJHC provided EHCL, BHI and the Principal with a draft Consent and Forbearance Agreement through which OMJHC attempted to impose personal liability on the Principal that does not exist under the Master Agreement or associated loan documents, and attempted to have EHCL, BHI and the Principal waive all past and future claims against OMJHC.  The proposed Consent and Forbearance Agreement provided OMJHC with exclusive control over the sale of the Team and the ability to take control over Team operations on five days' written notice.  Despite being told that BHI would not agree to these terms, and despite the fact that OMJHC verbally agreed to remove these onerous and unacceptable terms, the same terms appeared in multiple drafts.

In fact, prior to the June 30, 2013 demand letter, EHCL, BHI and the Principal were in active discussions with two different groups to sell the Team, which OMJHC was aware of. During the course of those discussions, OMJHC expressed a renewed interest in acquiring the

Team, and directed EHCL, BHI and the Principal to cease all discussions with the two interested parties.  When the deal that OMJHC was attempting to put together did not come to fruition, it issued the June 30, 2013 demand letter.

BHI refused to sign the Consent and Forbearance Agreement as presented, and the parties exchanged various drafts of the agreement until the end of April 2014, when OMJHC put an end to all negotiations after refusing to accept minor revisions including the insertion of a provision that would require it to act in accordance with applicable law with respect to the disposition of assets of a debtor by a secured creditor.

### B.    Contact with Erie County Convention Center Authority

On August 8, 2014, counsel for OMJHC sent a letter to John A. Wells, Executive Director of the Erie County Convention Center Authority (the "Authority"), which is EHCL's landlord, asserting that EHCL did not have authority to enter into a new proposed lease with the Authority because OMJHC had not provided its consent.  A true and correct copy of this letter is attached to the Motion as Exhibit "2" and is incorporated herein by reference.  OMJHC sent the letter to the Authority despite the fact that it had a copy of the proposed lease in its final form since July 3, 2014 and had never raised an objection.  In fact, OMJHC had, on more than one occasion, indicated that the new lease should be signed and that it was beneficial to EHCL.

On August 11, 2014 counsel for BHI and EHCL sent a letter to counsel for OMJHC indicating that the letter to the Authority was wholly inappropriate and a clear attempt to intimidate both the Team and the Authority, and that it constituted a blatant interference with current and prospective contractual relationships between the Team and the Authority.  A true and correct copy of this letter is attached to the Motion as Exhibit "3" and is incorporated herein by reference.

### C.     Contact with David Branch of the Ontario Hockey League and Others

On October 9, 2014, Daryl A. Katz of the Katz Group, which upon information and belief is the direct or indirect owner of OMJHC, sent a letter to David E. Branch, Commissioner of the OHL, airing the dispute between OMJHC, BHI, EHCL and the Principal and asking Mr. Branch to approve his enclosed application to transfer the OHL membership interest in the Team to OMJHC.  A true and correct copy of this letter is attached to the Motion as Exhibit "4" and is incorporated herein by reference.  Mr. Katz's letter indicates that he sent copies to Gary Bettman, Commissioner of the National Hockey League ("NHL"), Tom Renney, President of Hockey Canada, Ron Robison, Commissioner of the Western Hockey League ("WHL"), Dave Andrews, President of the American Hockey League, and Brian McKenna, Commissioner of the East Coast Hockey League, none of whom are parties to the agreements between OMJHC and BHI, EHCL and none of whom have any interest in this dispute.  Mr. Katz's letter served no purpose other than to embarrass and intimidate EHCL, BHI and/or the Principal and to interfere with their relationship with the OHL and its members.

Upon information and belief, OMJHC made calls to Ron Robison, President of the WHL, and executives with the NHL informing them of the dispute with EHCL, BHI and the Principal and attempting to convince them to intervene into the dispute and bring pressure on EHCL, BHI and the Principal.  Upon information and belief, as a result of the calls from OMJHC, Mr. Robison indicated to Mr. Branch that he would not attend meetings of the Canadian Hockey League until the dispute was resolved.  The Canadian Hockey League is the umbrella organization of which the WHL, the OHL and the Quebec Major Junior Hockey League are a part.  On information and belief, Movant believes that other contacts have been made by OMJHC and/or its representatives to third parties with whom BHI has existing and/or

prospective business relationships for the purpose of improperly putting pressure on EHCL, BHI and the Principal and otherwise interfering with their existing and prospective contractual relations.

**IV.     Confessed Judgments**

Based on the alleged occurrence of the Event of Default, as described in OMJHC's letter dated December 20, 2013, OMJHC initiated this action and entered a confessed judgment in the amount of $4,665,332.07.  Simultaneously, and based upon the same alleged Event of Default, OMJHC entered a confessed judgment in the amount of $4,665,332.07 against EHCL in the United States District Court for the Western District of Pennsylvania, Case No. 1:14-cv-22 (the "EHCL Judgment").

On November 28, 2014, OMJHC filed a praecipe for writ of execution against BHI without filing the required notice under Pa. R. Civ. P. 2958.1 or 2958.3.  These notices are required to be served upon BHI either thirty days prior to filing a praecipe for writ of execution (2958.1) or served contemporaneously with the writ of execution (2958.3).  Neither of these notices was filed on the docket.

**II.    Argument**

    A.    <u>The Court Should Strike the Confessed Judgment Because it is Defective on its Face.</u>

Confession of judgment clauses are strictly construed under Pennsylvania law, and failure to abide by the provisions of the warrant of attorney is a basis to strike the confessed judgment. <u>First Union Nat'l Bank v. Portside Ref. Svcs.</u>, 827 A.2d 1224, 1231 (Pa. Super. 2003)(superseded on other grounds) (*citing* <u>Citizens Nat'l Bank v. Rose Hill Cemetary Ass'n,</u>, 281 A.2d 73, 74 (Pa. Super. 1971).

> A motion to strike a judgment will be granted only if a fatal defect or irregularity appears on the face of the judgment, and the defect must be alleged in the motion to strike. *See Manor Building Corp.*, 645 A.2d at 846. In determining whether there is a defect, the court must review together the confession of judgment clause complained of and the complaint itself. *See 435 Pa. Super. at 252*. The facts averred in the complaint are to be taken as true; if the debtor disputes their truth, the remedy is a motion to open the judgment. *See id*. Circumstances in which a judgment should be stricken include a creditor's lack of authority to confess judgment, see, e.g., *Germantown Sav. Bank v. Talacki, 441 Pa. Super. 513, 657 A.2d 1285, 1291-92 (Pa. 1995)*; entry of judgment by means not in accord with provisions of a warrant of attorney, see, e.g., *Scott Factors, Inc. v. Hartley, 425 Pa. 290, 228 A.2d 887, 888-89 (Pa. 1967)*; and warrants that are not in writing, or not signed directly by the person to be bound by them, see, e.g., *Shidemantle v. Dyer, 421 Pa. 56, 218 A.2d 810, 811 (Pa. 1966)*.

Fed. Dep. Ins. Corp. v. Deglau, 207 F.3d 153,167 (3d Cir. 2000).  Additionally, "The Pennsylvania Rules of Civil Procedure must also be strictly followed if a valid confession of judgment is to be entered."  Citizens Nat'l Bank v. Rose Hill Cemetary Ass'n,, 281 A.2d 73, 74 (Pa. Super. 1971).

In this case the Pennsylvania Rules of Civil Procedure were not followed because the Complaint is not supported by a verification.  Pursuant to Pa. R. Civ. P. 2952(a)(10), the Complaint must contain a "signature and verification in accordance with the rules relating to a civil action."  And pursuant to Pa. R. Civ. P. 1024(a), every pleading containing an averment of fact not appearing of record shall be verified.  Because the Complaint is not supported by a verification, as required by Pennsylvania law, the judgment must be stricken.

B.  In the Alternative, the Court should Open the Judgment Because ECHL has Raised Claims and Defenses that Would Require the Issues to be Submitted to the Jury.

If the Court does not strike the judgment, the Court should open the judgment and provide BHI to present evidence and challenge the merits of the judgment and the claims,

defenses and counterclaims set forth in the Motion to Open and/or Strike. "A court should open a confessed judgment if the petitioner promptly presents evidence on a petition to open which in a jury trial would require that the issues be submitted to the jury." Stahl Oil Co., Inc. v. Helsel, 860 A.2d 508, 512 (Pa. Super. 2004).  In support of a petition to open, "A petitioner must offer clear, direct, precise and believable evidence of a meritorious defense, sufficient to raise a jury question." Id.  When considering a motion to open, "The district court is to view all the evidence in the light most favorable to the petitioner and to accept as true all evidence and proper inferences from it which support the defense while rejecting adverse allegations of the party obtaining the judgment." Fed. Dep. Ins. Corp. v. Deglau, 207 F.3d 153, 168 (3d Cir. 2000).

As set forth in the Motion, BHI has presented sufficient facts to support meritorious defenses and counterclaims against OMJHC including, but not limited to, the fact that OMJHC had access to all of the requested financial information upon which it based its alleged Event of Default and OMJHC's bad faith conduct in its dealings with BHI, BHI and the Principal as evidenced by, *inter alia*, (a) withholding of operating funds due under the Master Agreement when the Team was in a precarious financial condition; (b) the surreptitious insertion of paragraph 2.2(a)(2) of the Amending Agreement; (c) OMJHC's attempt to take exclusive control over the sale of the Team, to take exclusive control over the operation of the Team and to impose personal liability on the Principal through the proposed Consent and Forbearance Agreement; (d) OMJHC's August 8, 2014 letter to the Authority; (e) Mr. Katz's October 9, 2014 letter to Mr. Branch of the OHL, with copies to Gary Bettman, Commissioner of the National Hockey League, Tom Renney, President of Hockey Canada, Ron Robison, Commissioner of the Western Hockey League, Dave Andrews, President of the American Hockey League, and Brian McKenna, Commissioner of the East Coast Hockey League, none of whom are parties to the

agreements between OMJHC and EHCL and none of whom have any interest in this dispute; (f) OMJHC's direct telephone contact with Mr. Robinson and executives of the NHL asking them to intervene in this dispute and to bring pressure on BHI, EHCL and the Principal; and (g) filing the praecipe for writ of execution without filing or providing the notices required by Pa. R. Civ. P. 2958.1 or 2958.3.

      C.      The Court Should Stay all Proceedings, Including Execution Against BHI, Pending Final Resolution of the Motion to Open and/or Strike

All proceedings, including execution against BHI, should be stayed pending resolution of the Motion pursuant to Fed. R. Civ. P. 62(b) and Pa. R. Civ. P. 2959(b).  Pa. R. Civ. P. 2959(b) authorizes a stay of proceedings on a confessed judgment as long as the Petition "states prima facie grounds for relief ….", and Fed. R. Civ. P. 62(b) authorizes a stay of proceedings to enforce a judgment "On appropriate terms for the opposing party's security … pending disposition of any of the following motions:  … (4) under Rule 60, for relief from a judgment or order."

Execution and enforcement proceedings should be stayed pending the resolution of the Motion because BHI believes there are sufficient basis to open and/or strike the confessed judgment, believes that it has significant counterclaims against OMJHC as a result of its improper and bad faith conduct, because BHI, ECHL and the Principal are in the process of attempting to market the Team for sale in order to pay OMJHC in full and because if OMJHC is permitted to proceed with execution, the operations of the Team would be severely disrupted and the value of the Team could be destroyed, which would be detrimental to the Team, the players, the OHL, BHI, EHCL and OMJHC.  The continued and uninterrupted operation of the Team is the only way in which to maximize the value of the Team for the benefit of both BHI and

OMJHC.  Additionally, OMJHC will not be prejudiced by a stay because the continued operation of the Team in the ordinary course protects the value of its collateral.

### Conclusion

For the reasons set forth herein, and for the reasons set forth in the Motion to Open and/or Strike, the Court should enter an Order striking the confessed judgment entered against BHI by OMJHC.  In the alternative, the Court should enter an Order opening the confessed judgment to allow to allow a trial on the merits of the claims, defenses and counterclaims set forth in the Motion to Open and/or Strike.  Finally, the Court should enter an Order, staying all proceedings in this case, including execution, against BHI pending a final resolution of the Motion to Open and/or Strike.

Dated:  November 28, 2014

                            Respectfully submitted,

                            */s/ Nicholas R. Pagliari*
                            James R. Walczak
                            PA Supreme Court ID No. 26028
                            Nicholas R. Pagliari
                            PA Supreme Court ID No. 87877
                            MacDONALD, ILLIG, JONES & BRITTON LLP
                            100 State Street, Suite 700
                            Erie, Pennsylvania 16507-1459
                            (814) 870-7754
                            FAX (814) 454-4647
                            npagliari@mijb.com

                            Counsel to Defendant/Movant,
                                Bassin Hockey, Inc.